**Cassandra FALK, Individually and as Administratrix of the Estate of James Jeffrey Falk; James Blake Falk and Lauryn Emily Falk, By and Through Their Next Friend, Mother, and Custodian Cassandra Falk; Sandy Travis, Individually and as Administratrix of the Estate of Justin Travis; Melissa**

Carter, Individually and as Administratrix of the Estate of Michael W. Carter; and Hayden Carter, By and Through His Next Friend, Mother, and Custodian Melissa Carter, Appellants

v.

ALLIANCE COAL, LLC, Appellee

2013–SC–000655–DG

Supreme Court of Kentucky.

RENDERED: JUNE 11, 2015

Counsel for Appellants: Roger Newman Braden, Edgewood, Braden Humfleet & Devine, PLC, John C. Whitfield, Whitfield Bryson & Mason LLP, Madisonville

Counsel for Appellee: Philip Douglas Barr, Dana Rashay Howard, Stoll Keenon Ogden PLLC, Lexington

Counsel for Amicus Curiae Arch Coal, Inc.: Grahmn New Morgan, David James Treacy, Timothy Reed Wiseman, Dinsmore & Shohl LLP, Lexington

## OPINION OF THE COURT BY JUSTICE KELLER

This appeal arises from two summary judgments in favor of Alliance Coal, LLC (Alliance). The Court of Appeals affirmed those judgments, and we granted discretionary review. For the reasons set forth below, we affirm.

## I. BACKGROUND.

The underlying facts necessary for resolution of this appeal are not in dispute. At all relevant times, River View Coal, LLC (River View)[1] and Webster County Coal, LLC (Webster County) were wholly owned subsidiaries of Alliance. As the parent company, Alliance exercised some direct control over its subsidiaries; for example, Alliance chose the subsidiaries' general managers, and it provided technical and other services to its subsidiaries.

Alliance, as parent company, submitted to the Department of Workers' Claims (the DWC) an "Employers [sic] Application for Permission to Carry His Own Risk Without Insurance" (Form SI–02), listing itself as the applicant and Webster and River

View, among others, as subsidiaries. In conjunction with the Form SI–02, Alliance also submitted a "Self–Insurers' Guarantee Agreement" (Form SI–01) whereby Alliance guaranteed payment of benefits under the Workers' Compensation Act (the Act) in the event its subsidiaries failed to pay benefits. The DWC accepted and approved the application.

On April 28, 2010, Justin Travis and Michael Carter died in a mining accident while employed by Webster County, and on October 27, 2010, James J. Falk died in a mining accident while employed by River View. Webster County and River View accepted the workers' compensation claims made on behalf of the surviving widows and children of the deceased miners. Benefit checks bearing the names of Webster County and River View respectively have been and continue to be issued to the Appellants. The Appellants argue that, because the checks bear the names of Webster County and River View, those entities are the issuers. However, it is clear that the benefits are paid from the same account, an account that belongs to Alliance. Therefore, regardless of which name is printed on the checks, Alliance is paying the benefits.

The Appellants filed law suits against Alliance alleging that it had liability for the miners' deaths, and Alliance moved for summary judgment arguing that it had immunity under the Act. The trial court agreed with Alliance and dismissed the Appellants' claims. The Court of Appeals affirmed, and the Appellants sought discretionary review, which this Court granted.

---

1. The record contains two spellings for River View Coal, one as a compound word, Riverview, and one as two separate words, River View. We use the latter because that is the spelling used by Alliance in attachments to the forms it filed with the Department of Workers' Claims.

We note that we granted review, in part, based on the following. *Sergent v. ICG Knott Cnty., LLC,* No. CIV. 12–118–ART, 2013 WL 6451210 (E.D.Ky.), a case currently pending in the Federal District Court for the Eastern District of Kentucky, involves a similar parent company immunity issue. While the Appellants' motion for discretionary review was pending, Arch Coal, Inc., a defendant in *Sergent,* asked the district court to seek certification of the law from this Court. The district court denied Arch's request, holding certification was not necessary because the Sixth Circuit Court of Appeals' holding in *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1979) controlled. The opinion of the Court of Appeals herein and the opinion of the 6th Circuit Court of Appeals in *Boggs* ostensibly reach different conclusions on the issue of parent company immunity. We take this opportunity to address the issues raised by the Appellants herein and thereby also address any conflict with *Boggs.*

## II. STANDARD OF REVIEW.

■ The parties agree that there are no issues of material fact; therefore, we review this matter *de novo. See Caniff v. CSX Transp., Inc.,* 438 S.W.3d 368, 372 (Ky.2014).

## III. ANALYSIS.

■ KRS 342.690(1) provides that:

If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.... *The exemption from liability given an employer by this section shall also extend to such employer's carrier* and to all employees, officers or directors of such employer or carrier, provided the exemption from liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.

(Emphasis added.)

An employer may secure payment of compensation by: (1) joining or forming a self-insured fund pursuant to KRS 342.350(4); (2) purchasing insurance from a "corporation, association, or organization authorized to transact the business of workers' compensation insurance in this state" (KRS 342.340(1)); or (3) furnishing to the Commissioner of the DWC "proof of its financial ability to pay directly the compensation." *Id.* It is undisputed that Alliance, Webster County, and River View took the third path, choosing to secure their payment of compensation by self-insuring. To do so, they followed the process set forth in 803 KAR 25:021(6):

A corporation having a wholly-owned subsidiary may submit one (1) joint application to the [commissioner], if the parent corporation has sufficient assets to qualify for a self-insurance certificate for both itself and the subsidiary. A joint application shall be accompanied by a certificate of the secretary of each corporation indicating that their respective boards of directors have by resolution authorized joint and several liability for all the workers' compensation claims asserted against them. These certificates shall be effective until revoked by the corporations following thirty (30)

days written notice to the [commissioner].[2]

As noted above, Alliance filed a Form SI–02 listing itself as the applicant and Webster County and River View as subsidiaries "to be included under [Alliance's] self-insurance program." Furthermore, pursuant to a requirement by the DWC as listed in its "Request for Information" form, Alliance completed and filed a Form SI–01 guaranteeing payment of benefits should Webster Coal or River View fail to do so. Alliance admits it is not entitled to immunity from tort liability as an employer of the deceased miners; however, it argues that, by filing the preceding, it qualifies for immunity as a carrier. The Appellants argue that Alliance is not a "carrier," but a "guarantor," and that guarantors have no immunity. Thus, we must determine if a parent company that applies for a self-insurance certificate for itself and its subsidiaries is a carrier.

▆▆▆▆ A carrier is "any insurer, or legal representative thereof, authorized to insure the liability of employers under this chapter and includes a self-insurer." KRS 342.0011(6). A " '[s]elf-insurer' is an employer who has been authorized under the provisions of this chapter to carry his own liability on his employees covered by this chapter." KRS 342.0011(7). Thus, we must determine if a parent company that insures itself, as well its subsidiaries, pursuant to 803 KAR 25:021 § 3 and § 6 is a carrier and entitled to immunity. Doing so requires us to interpret the relevant statutes and regulations.

We presume when interpreting a statute that the legislature intended for it to mean exactly what it says. Although ambiguous language must be interpreted based on legislative purpose and intent, unambiguous language requires no interpretation. Yet, nothing requires a statute's subsection to be read in a vacuum rather than in the context of the entire statute. *Chrysalis House, Inc. v. Tackett,* 283 S.W.3d 671 (Ky.2009). Furthermore, we presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. *Hall v. Hospitality Resources, Inc.,* 276 S.W.3d 775 (Ky.2008); *Lewis v. Jackson Energy Cooperative Corporation,* 189 S.W.3d 87 (Ky.2005). We also presume that the General Assembly did not intend for a statute to be absurd. *Layne v. Newberg,* 841 S.W.2d 181 (Ky.1992).

The Appellants urge us to read KRS 342.0011(6) & (7) literally. Doing so leads to the conclusion that Alliance was not a self-insurer as to the decedents because it did not employ them. However, as set forth below, Alliance was an insurer under the Act, and, as an insurer, Alliance is a carrier entitled to immunity.

The Appellants argue that Alliance cannot be a carrier because it is not an insurance company registered with the Kentucky Department of Insurance. However, the statute does not define a carrier as an insurance company registered with the Kentucky Department of Insurance. It defines a carrier as an insurer authorized to insure the liability of employers. The legislature could have more narrowly defined carrier as an insurance company, which it did when it defined "insurance carrier." KRS 342.0011(22) (" 'Insurance carrier' means

**2.** From 2005 through 2010, the Commissioner of the DWC was referred to as the Executive Director. In 2010, the title of Commissioner was reinstated. The 2010 change in title from Executive Director to Commissioner was not made in 803 KAR 25:021. We have made the change herein for the sake of consistency and clarity.

every insurance carrier or insurance company authorized to do business in the Commonwealth writing workers' compensation insurance coverage....") Furthermore, the legislature could have stated that only an insurance carrier is immune from liability. However, the legislature chose to define carrier more broadly, thus extending immunity beyond insurance companies authorized to do business in the Commonwealth.

Having determined that the designation of "carrier" is not limited to insurance companies, we must determine what that designation encompasses. As noted above, a carrier is any insurer authorized to insure the liability of employers. The DWC, through its regulations, has devised a method of authorizing employers to self-insure. Additionally, the DWC has devised a method for a parent company to seek "a self-insurance certificate for both itself and [its] subsidiary." 803 KAR 25:021 § 6. When it issues such a self-insurance certificate, the DWC authorizes a parent company that meets certain qualifications to insure itself as well as its subsidiary, which necessarily is an employer. Thus, a parent corporation that follows the procedures set forth in the regulations is an insurer and a carrier, and entitled to immunity.

The Appellants argue that Alliance, when it completed the necessary forms to obtain a self-insurance certificate was actually applying for self-insured status for itself, Webster Coal, and River View individually. A cursory examination of the Form SI–02 belies that argument. Alliance listed itself as the applicant and attached the names of Webster Coal and River View as subsidiaries. There is no separate application for self-insured certification from either Webster Coal or River View.

Furthermore, the Appellants' argument to the contrary notwithstanding, Alliance's filing of a Form SI–01 guarantee agreement does not mean that Webster Coal and River View were filing individually for self-insured certification. It is true that 803 KAR 25:021 § 3($l$)(j) states that "[i]f the applicant is a subsidiary corporation, a guarantee from the subsidiary's parent corporation on form SI–01" must be filed. However, § 3 involves application for individual self-insurance, not parent/subsidiary self-insurance; and, the "Request for Information" form that must accompany the Form SI–02 requires the applicant "to list all entities ... that are to be included under your self-insurance program" and to file a Form SI–01 guarantee agreement for each subsidiary. While it is unclear why the DWC requires this guarantee in both situations, the fact that it is required does not negate Alliance's status as an insurer.

■ Finally, we note that our holding is in harmony with one of the purposes of the Act, to extend benefits to employees without the need to prove fault, while protecting employers from tort liability.

The Workers' Compensation Act is social legislation, a product of compromises by workers and employers. Workers agree to forego common law remedies in exchange for statutory benefits awarded without regard to fault. Employers agree to pay such benefits and to forego common law defenses in exchange for immunity from tort liability.... In other words, an employer's immunity follows its liability for workers' compensation benefits.

*Labor Ready, Inc. v. Johnston*, 289 S.W.3d 200, 204–205 (Ky.2009). The legislature has extended this immunity to carriers and contractors, which both beak actual or potential liability for workers' compensation benefits. KRS 342.690.

In order to qualify for a self-insured certificate, Alliance had to certify that it had adopted a resolution authorizing "joint and several liability for all the workers' compensation claims asserted against" Webster Coal or River View. Alliance is liable for claims against its subsidiaries, just as a contractor may be liable for claims against its sub-contractor and just as a carrier is liable for claims against its insured. Therefore, Alliance is entitled to the immunity that follows its liability.

## IV. BOGGS V. BLUE DIAMOND COAL.

As noted above, a case currently pending in the Federal District Court for the Eastern District of Kentucky has been stayed pending our opinion herein. In order to be clear, we specifically address *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.1979), the opinion the district court found to be controlling.

In *Boggs*, the survivors of several miners who died in the 1976 Scotia Mine explosion brought suit against Blue Diamond Coal Co., the parent of Scotia Mine Company. The Federal District Court granted summary judgment to Blue Diamond, finding that it was a contractor under the Act and therefore entitled to immunity. The Sixth Circuit Court of Appeals reversed, finding that there was no contractual relationship between Blue Diamond and Scotia sufficient to bring Blue Diamond within the protection afforded to contractors by the Act. Furthermore, the Court determined that Blue Diamond was not an employer of the miners as defined by the Act. In its conclusion, the Court stated that "a parent is not immune from tort liability to its subsidiary employees for its own, independent acts of negligence. The parent should be liable under customary principles of common law for harm resulting from its own negligence or reckless con-

duct." *Id.* at 663. This is a correct statement of the law, within the context of *Boggs, i.e.* when there has been a finding that the parent is neither an employer nor a contractor. However, as set forth above, the issue before us is not whether Alliance was an employer or contractor, but whether it was a carrier.

We note that, in *dicta* in a footnote, the Court addressed Blue Diamond's argument that, as a joint self-insurer with Scotia, it had "carrier immunity." The Court rejected that argument, holding that a self-insurer is only entitled to immunity in connection with its own employees. *Boggs,* 590 F.2d at 663. In doing so, the Court noted that Blue Diamond acted "jointly with Scotia as self-insuror for that portion of their workmen's compensation obligation which they do not insure through insurance companies." *Id.* Thus, it appears that Blue Diamond did not completely self-insure Scotia, which is clearly different from the relationship between Alliance and its subsidiaries, Webster Coal and River View. Furthermore, the Court did not undertake any analysis regarding Blue Diamond's status as a carrier. Therefore, neither the direct holding in *Boggs* nor the *dicta* is of any persuasive value.

To reiterate, a parent company that completely "self-insures" the liability of its subsidiary as provided in the regulations, is a carrier and immune from tort liability, just as its subsidiary is. To the extent *Boggs* holds otherwise, it is incorrect.

## V. CONCLUSION.

For the foregoing reasons, we affirm the Court of Appeals.

All sitting. All concur.