CLAY, Circuit Judge,
dissenting.
The majority would bestow upon this Circuit the dubious distinction of becoming the first circuit -in the nation to hold that a denial of an affirmative defense of state workers’ compensation immunity is immediately appealable. In its apparent eagerness to reach the merits, the majority ignores the plain language of the Kentucky Workers’ Compensation Act, overlooks a *587 substantial body of case law construing the statute, and fails to heed the stern and frequent cautions of the United States Supreme Court that the “narrow” rule allowing appeals from a small class of non-final orders “should stay that way and never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.” Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (citation omitted). Because Kentucky law does not establish that denials of workers’ compensation immunity belong in that limited class, I would dismiss this appeal for lack of jurisdiction.
The circumstances giving rise to this appeal from a denial of immunity at the summary judgment stage are somewhat atypical: Defendants Dixie and Georgia-Pacific are private parties in a diversity action asserting immunity only under state law. Specifically, Dixie and Georgia-Pacific seek a finding that they are entitled to so-called “exclusive remedy immunity” and “up-the-ladder immunity” under provisions of a Kentucky statute requiring a covered employer to pay workers’ compensation benefits to its own employees or the employees of subcontractors for on-the-job injuries without regard to fault; “[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability.” Ky. Rev. Stat. § 342.690(1). The district court ruled that Dixie and Georgia-Pacific had not made out their affirmative defense of immunity under the Kentucky Workers’ Compensation Act (the “Act”), and denied summary judgment. Dixie and Georgia-Pacific took an immediate appeal seeking reversal of that finding.
Before we address whether Dixie and Georgia-Pacific are entitled to up-the-ladder immunity, we must first address our jurisdiction. Federal law, including decisions of the Supreme Court regarding appeals from non-final orders, governs our jurisdiction to hear this appeal in a federal forum, and state law supplies the substance of the immunity we are called upon to analyze. Range v. Douglas, 763 F.3d 573, 581 (6th Cir. 2014) (citing Chesher v. Neyer, 477 F.3d 784, 793 (6th Cir. 2007)). As the Second Circuit put it, “[sjtate substantive law governs the scope of immunity for state law claims, and federal law determines the appealability of the district court’s order.” In re World Trade Ctr. Disaster Site Litig., 521 F.3d 169, 181 (2d Cir. 2008) (quotations and citations omitted). Accord Budinich v. Becton Dickinson & Co., 486 U.S. 196, 198-99, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). This Circuit distinguishes between state statutes conferring immunity from liability and those conferring immunity from suit; “[a]n order denying statutory immunity is immediately appealable only if the state law provides immunity from suit, as opposed to immunity simply from liability.” Chesher, 477 F.3d at 793 (emphasis added); see also Range, 763 F.3d at 581; Tenon of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia, 723 F.3d 640, 645 (6th Cir. 2013).
Determining whether a state statute provides immunity from liability or immunity from suit for purposes of interlocutory appellate jurisdiction naturally entails a review of the relevant statutory provisions and case law. Where we are “required to determine issues that rest upon Kentucky law, we must apply Kentucky law in accordance with the controlling decisions of the Kentucky Supreme Court.” Snow Pallet, Inc. v. Clinton Cty. Indus. Dev. Auth., 46 Fed.Appx. 787, 789 (6th Cir. 2002). Unlike the majority, I do not believe the Act or the cases construing it establish that exclusive remedy and up-the-ladder immunity constitute immunity from suit, rather than *588 mere immunity from liability, under Kentucky law.
Insofar as neither party seems to fully grasp the analysis by which we assess interlocutory appellate jurisdiction in the federal courts, some initial review may be in order. “By statute, Courts of Appeals ‘have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.’ ” Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009) (quoting 28 U.S.C. § 1291). Ordinarily, a denial of summary judgment is not final for purposes of appellate jurisdiction. McDonald v. Flake, 814 F.3d 804, 815 (6th Cir. 2016).
The.collateral order doctrine is a limited practical application of this rule allowing appeals from non-final orders that “finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” Johnson v. Jones, 515 U.S. 304, 310, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).[1] This statement has been distilled into three requirements: an immediately appealable, order must “(1) ‘conclusively determine [a] disputed question,’ (2) ‘resolve an important issue completely separate from the merits of the action,’ and (3) ‘be effectively unreviewable on appeal from a final judgment.’ ” Behrens v. Pelletier, 516 U.S. 299, 315, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (alteration original). Denials of absolute immunity, qualified immunity, and Eleventh Amendment immunity, as well as rulings adverse to a criminal defendant on a double jeopardy defense, among a very few others, belong in this select class. Will v. Hallock, 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006).
Recently, the Supreme Court described the conditions for a collateral appeal as follows:
The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes.... That a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has never sufficed. Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order.
Mohawk Industries, 558 U.S. at 106, 130 S.Ct. 599 (quotations and citations omitted). As a court of appeals, we have been admonished to be wary of the arguments in favor of an immediate appeal: “§ 1291 requires courts of appeals to view claims of a ‘right not to be tried’ with skepticism, if not a jaundiced eye.” Digital Equip., 511 U.S. at 873, 114 S.Ct. 1992.
In order to determine whether this this type of immunity constitutes an immunity from liability or an immunity from suit altogether, federal courts must look to the language of the state statute and the cases construing it. World Trade Ctr., 521 F.3d at 182. Dixie and Georgia-Pacific seek to avoid an adverse judgment in Black’s neg *589 ligence action by invoking the exclusive remedy provision of the Kentucky Workers’ Compensation Act, which states that “[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee.” Ky. Rev. Stat. § 342.690(1). That same statutory provision extends the definition of an employer to a “contractor,” which is defined as follows in a separate section of the Act:
(2) A contractor who subcontracts all or any part of a contract ... shall be . liable for the payment of compensation to the employees of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured the payment of compensation ... Any contractor ... who shall become liable for such compensation may recover the amount of such compensation, paid and necessary expenses from the subcontractor primarily hable therefor. A person who contracts with another:
(b) To have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person shall for the purposes of this section be deemed a contractor, and such other person a subcontractor.
Ky. Rev. Stat. § 342.610.
The Kentucky Supreme Court has described the Act as “a product of compromises by workers and employers” whereby “[w]orkers agree to forego common law remedies in exchange for statutory benefits awarded without regard to fault” and “[e]mployers agree to pay such benefits and to forego common law defenses in exchange for immunity from tort liability.” Labor Ready, Inc. v. Johnston, 289 S.W.3d 200, 204 (Ky. 2009). Likewise, the purpose of so-called “up-the-ladder-immunity” for subcontractors is to
discourage a contractor from subcontracting work that is a regular or recurrent part of its business to an irresponsible subcontractor in an attempt to avoid the expense of workers’ compensation benefits. KRS 342.610(2)(b) accomplishes its purpose by viewing an up-the-ladder contractor as being the employer of an uninsured subcontractor’s employees ... KRS 342.690(1) provides both direct and statutory employers with immunity from tort liability for work-related injuries.
Doctors’ Associates, Inc. v. Uninsured Employers’ Fund, 364 S.W.3d 88, 91 (Ky. 2011) (footnote omitted). In another case, the Kentucky Supreme Court equated “exclusive remedy immunity” with “immunity] from tort liability” in stating the substantive test for up-the-ladder immunity:
[Wjhether an owner is entitled to “exclusive remedy” immunity depends upon whether the worker was injured while performing work that was “of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession” of the owner. If so, the owner is immune; if not, the owner is subject to tort liability.
Gen. Elec. Co. v. Cain, 236 S.W.3d 579, 585 (Ky. 2007) (quoting Ky. Rev. Stat. § 342.610(2)(b)).
Notably, the relevant statutory provisions speak exclusively in terms of the “liability of [an] employer” as being “exclusive” under the Act, or, alternately, in terms of whether the employer is “liable for the payment of compensation.” In various semantic formulations, the cases cited above echo the statutory language by referring to this type of state law immunity *590 as being immunity from liability. The most recent case to have considered Ky. Rev. Stat. § 342.690 — which postdates the Ervin Cable case discussed below- — • termed “one of the purposes of the Act” as “extending] benefits to employees without the need to prove fault, while protecting employers from tort liability.”' Falk v. All. Coal, LLC, 461 S.W.3d 760, 765 (Ky. 2015). Indeed, describing exclusive remedy immunity and up-the-ladder-immunity as immunity from liability appears to be the dominant trend in Kentucky case law. See, e.g., State Farm Mut. Auto. Ins. Co. v. Slusher, 325 S.W.3d 318, 322 (Ky. 2010); Davis v. Hensley, 256 S.W.3d 16, 17 (Ky. 2008); Fireman’s Fund Ins. Co. v. Sherman & Fletcher, 705 S.W.2d 459, 464 (Ky. 1986) (describing Ky. Rev. Stat. § 342.690(1) as providing an “exemption from liability”). By contrast, when Kentucky courts speak of the immunity enjoyed by government entities, they uniformly describe that immunity as “immunity from suit.” See, e.g., Comair, Inc. v. Lexington-Fayette Urban Cty. Airport Corp., 295 S.W.3d 91, 94 (Ky. 2009); Caneyville Volunteer Fire Dep’t v. Green’s Motorcycle Salvage, Inc., 286 S.W.3d 790, 805 (Ky. 2009).
Ignoring these precedents, the majority nonetheless selectively characterizes exclusive remedy immunity and up-the-ladder-immunity under Kentucky workers’ compensation law as providing immunity from suit, as opposed to immunity from liability. The majority rests its finding of jurisdiction on the “reality that up-the-ladder immunity insulates contractors from lawsuits, not just liability” — a skewed contention it constructs on the basis of a footnote to a single decision ,of the Kentucky Supreme Court and a decision of the Kentucky Court of Appeals granting an interlocutory appeal from a denial of up-the-ladder immunity. See Beaver v. Oakley, 279 S.W.3d 527, 528 n.1 (Ky. 2009); Ervin Cable Constr., LLC v. Lay, 461 S.W.3d 422, 424 (Ky. Ct. App. 2015). It purports to find further support for its holding in a policy argument about the efficiency of foregoing litigation altogether in exchange for workers’ compensation benefits, which appears rooted more in its own ideas about how a ■workers’ compensation program should work than in the language of the Kentucky statute or what Kentucky cases actually say the legislation is designed to achieve.
Although the classification of up-the-ladder immunity as “immunity from suit” seems mostly not to have taken hold, the majority is thus quick to seize on a few instances in which Kentucky courts have referred to exclusive remedy liability as “immunity from suit” — a term that occasionally appears to have been used interchangeably with “immunity from liability” — and cites a single mention of “absolute immunity” in a lone case of the Kentucky Court of Appeals, Ervin Cable. Beaver, for instance, discussed whether a construction manager could be “considered a contractor and qualify for up-the-ladder immunity from tort liability,” and added an explanatory footnote stating that “[i]n Kentucky, ‘up-the-ladder immunity’ refers to a contractor’s immunity from tort lawsuits where the plaintiff was injured at work and workers’ compensation benefits are the plaintiffs exclusive remedy under Kentucky Revised Statutes (KRS) 342.690.” Beaver, 279 S.W.3d at 528, 528 n.1 (emphasis added).[2]
The majority treats the case of Ervin Cable as dispositive authority for the fact *591 that Kentucky “treats” the liability in question as immunity from suit, thus trumping the statute and all other cases discussing up-the-ladder immunity. In Ervin Cable, the only Kentucky case to have described this type of immunity as “absolute immunity,” the Kentucky Court of Appeals found a denial of up-the-ladder immunity subject to direct appeal in the state courts. See 461 S.W.3d at 423. That decision cited the footnote in Beaver referring to “immunity from tort lawsuits”— although it later described Beaver as concerning immunity from liability — to support a description of exclusive remedy liability as “absolute immunity” entitling the defendant corporation to an interlocutory appeal from a denial of summary judgment. Ervin Cable, 461 S.W.3d at 424. Its discussion of appellate jurisdiction was extremely brief, and did not cite any Kentucky case law on workers’ compensation immunity, instead relying exclusively on a case involving a defendant performing governmental functions:
Ordinarily, a trial court’s order denying summary judgment is not immediately reviewable on appeal since such an order is considered interlocutory. However, in this case Ervin Cable moved for summary judgment on grounds of absolute immunity, the denial of which is subject to immediate appeal since immunity is designed to free the possessor not only from liability, but also from the costs of defending an action. Breathitt County Bd. of Educ. v. Prater, 292 S.W.3d 883 (Ky. 2009). In other words, the denial of a substantial claim of immunity is an exception to the finality rule that interlocutory orders are not immediately ap-pealable. Id. As a result, this court has jurisdiction to address Ervin Cable’s claim that the trial court improperly denied its motion for summary judgment.
Id. at 423.
Ervin Cable was decided six years after Beaver, and the Kentucky Supreme Court has yet to weigh in on whether Kentucky courts allow interlocutory appeals of denial of up-the-ladder immunity. A sole decision from a state intermediate appellate court allowing an interlocutory appeal under state procedures should not obviate the necessary analysis of the statutory language and case law, which should guide this Court’s inquiry. See World Trade Ctr., 521 F.3d at 182 (“[w]e therefore caution against placing too much emphasis on state appellate procedures ... we need only consider the statutory language, if any, of each defense, and the cases construing the defense”). Because even a cursory review of Kentucky law fails to establish that Kentucky confers upon statutory employers immunity from suit, as opposed to merely immunity from liability, up-the-ladder immunity does not satisfy the requirement of effective unreviewability that is a precondition to our hearing any interlocutory appeal. See Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 605 (6th Cir. 2005) (“[wjhere statutory immunity protects defendants from liability, as opposed to suit, denial of such immunity is not ‘effectively unreviewable on appeal from a final judgment’ ”).
Relying heavily on Ervin Cable, Dixie and Georgia-Pacific argue that “[bjecause this is a diversity jurisdiction lawsuit, the law of the forum state, Kentucky, controls. Significantly, Kentucky law recognizes and permits an immediate appeal of a denial of the same immunities raised by Dixie in this case — an appeal prior to the entry of final judgment.” (Defs.’ Br. at 46.) This argument obscures the fact that our analysis of our own jurisdiction is concerned solely with principles of federal law — an issue on which a sole decision of the Kentucky Court of Appeals, assessing its jurisdiction under state law, is anything but dispositive. See Budinich, 486 U.S. at 198-99, 108 S.Ct. 1717.
*592 The majority attempts to bolster its jurisdictional finding by citing a number of cases in which various courts of appeals granted interlocutory appeals to private defendants. However, all such cases entailed much stronger claims to genuine immunity from suit, and much more persuasive justifications for relieving an appellant from the burdens of litigation. Several other circuits have found denials of motions brought pursuant to state anti-SLAPP statutes to be immediately appeal-able. See, e.g., DC Comics v. Pac. Pictures Corp., 706 F.3d 1009 (9th Cir. 2013). “SLAPP” stands for “strategic lawsuit against public participation” or “strategic litigation against public participation”; state anti-SLAPP statutes provide defendants named “as a result of the exercise of their constitutional rights to petition the government” with “procedural and substantive defenses meant to prevent merit-less suits from imposing significant litigation costs and chilling protected speech.” Godin v. Schencks, 629 F.3d 79, 81 (1st Cir. 2010). The essential purpose of these statutes is, as the California Supreme Court put it, to vindicate the “right not to be dragged through the courts because you exercised your constitutional rights.” Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 147 (2d Cir. 2013) (quoting Varian Med. Sys., Inc. v. Delfino, 35 Cal.4th 180, 193, 25 Cal.Rptr.3d 298, 106 P.3d 958 (2005)). Because stopping retaliatory or chilling litigation in its tracks is clearly both the purpose of and the remedy provided by these statutes, it is only natural that they be regarded as conferring immunity from suit — and accordingly subject to collateral appeal.
McMahon v. Presidential Airways, Inc., 502 F.3d 1331 (11th Cir. 2007), also relied upon by the majority, is of no greater help. McMahon granted an interlocutory appeal to a defendant private military contractor; extending the reasoning of cases establishing governmental immunity from tort suits by soldiers for service related-injuries, the court held that the contractor had “stated a substantial claim to a true immunity from suit” because “the litigation process itself’ — including depositions and trial testimony — “could conceivably cause intolerable interference with ... sensitive military judgments.” Id. at 1340. This is nothing new, and no more than the precedents of this Court and the Supreme Court require; in an unpublished opinion, we summarized the collateral order doctrine as “permit[ting] interlocutory appeals from denials of substantial claim[s] of absolute immunity in circumstances where the party claiming immunity seeks avoidance of a trial that would imperil a substantial public interest.” Delawder v. Platinum Fin. Servs. Corp., 189 Fed.Appx. 369, 370 (6th Cir. 2006) (quotations and citations omitted).
No such strong claim to immunity from suit, nor so compelling a justification from relieving the defendants from the burdens of litigation' — in which they have participated for the past eight years — exists in this case. Citing only highly inapposite Supreme Court cases and no Kentucky cases whatsoever, Dixie and Georgia-Pacific assert in their reply brief that “the immunity legal ruling would be effectively unreviewable on appeal from a final judgment ... and the public interest affected is the defendants’ right to be free from trial in exchange for the exclusive remedy of workers’ compensation' — a government-controlled insurance system to protect injured workers.” (Def.’s Reply Br. at 7.) This is just the sort of avoidance-of-trial argument of which we are supposed to be wary, and which has so often been rebuffed over the years. Will instructs that “[tjhose seeking immediate appeal ... naturally argue that any order denying a claim of right to prevail without trial” is effectively unreviewable if not immediately *593 appealed, which is a “generalization ... too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters.” 546 U.S. at 351, 126 S.Ct. 952.
The extreme wariness with which we are to “apply[] ‘the blunt, categorical instrument of [a] § 1291 collateral order appeal’ ” likewise counsels against expanding the class of collaterally appealable orders to include denials of up-the-ladder immunity under Kentucky law. Mohawk Indus., 558 U.S. at 112, 130 S.Ct. 599 (quoting Digital Equip., 511 U.S. at 883, 114 S.Ct. 1992). Thus, the majority opinion suffers as much from errors of methodology as of legal analysis. In rendering an entirely new category of state court orders subject to interlocutory appeal, the. majority fails to be governed by the restraint that our jurisprudence requires. The Supreme Court said it best in Will: “we have meant what we have said; although the Court has been asked many times to expand the ‘small class’ of collaterally appealable orders, we have instead kept it narrow and selective in its membership.” 546 U.S. at 350, 126 S.Ct. 952. I would take the Supreme Court at its word.

. Black appears to believe, incorrectly, that only governmental defendants are entitled to collateral appeals. Cohen, which concerned the district court's refusal to post security as required for a shareholder derivative action under New. Jersey law, involved private parties. See 337 U.S. 541, 69 S.Ct. 1221.

. Footnote 1 of Beaver was cited by this Court in Dilts v. United Grp. Servs., LLC, 500 Fed.Appx. 440, 449-50 (6th Cir. 2012) and by the Kentucky Court of Appeals in Ervin Cable, 461 S.W.3d at 424.