RENDERED: NOVEMBER 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0033-MR


JASON STANFORD; JMFS, LLC;
AND SOUTH SIDE QUARRY, LLC                          APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
                    ACTION NO. 21-CI-400374


DOT CAPITAL INVESTMENTS, LLC;
ASSET ACCEPTANCE, LLC C/O
MIDLAND CREDIT MANAGEMENT,
INC. C/O CANON BUSINESS
SERVICE PROCESS SERVICES;
CAROLE C. SCHNEIDER AS
MASTER COMMISSIONER;
CHARLEEN GADD; DR. DEADBA
RANCH, LLC; HARVEST CREDIT
MANAGEMENT, LLC C/O HIGHEST
EXECUTIVE OFFICER OR AGENT;
HOBBS STATION LAND TRUST;
LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT; RJDD, LLC;
SOUTH LONG RUN LAND TRUST;
THE LOUISVILLE TRUST
COMPANY; AND UNEMPLOYMENT
INSURANCE                                              APPELLEES

** ** ** ** **

BEFORE: CETRULO, ECKERLE, AND GOODWINE, JUDGES.

CETRULO, JUDGE: Appellants – two limited liability companies ("LLCs") and their sole member – appeal a circuit court order adopting a Master Commissioner's recommendation to deny the Appellants' attempt to redeem a property after foreclosure proceedings. After review, we affirm.

## BACKGROUND

As tenants in common, Appellant JMFS, LLC ("JMFS") held a 25% interest and Appellee Dr. Deadba Ranch, LLC ("DDR") held a 75% interest in two parcels of land located on Hobbs Lane in Fisherville, Kentucky (collectively, the "Property"). In June 2021, Appellee DOT Capital Investments, LLC filed an action to collect delinquent real estate taxes due on the Property. In February 2022, the Jefferson Circuit Court entered a judgment and order of sale.

On April 12, 2022, the Master Commissioner sold the Property to the highest bidder, JCG Properties, for $30,000 (the "Sale"). That same day, JCG Properties assigned its winning bid to Appellee Hobbs Station Land Trust ("Hobbs Station"). Subsequently, the Master Commissioner executed and issued a deed to the Trustees of Hobbs Station. As the winning bid was less than two-thirds of the Property's appraised value ($172,000), both JMFS and DDR retained a statutory

right of redemption until October 12, 2022, six months from the date of the Sale. *See* Kentucky Revised Statute ("KRS") 426.530. Both JMFS and DDR assigned their right of redemption. JMFS assigned its right of redemption to Appellant South Side Quarry, LLC ("SSQ")[1] on April 15, 2022, but did not record the assignment at this time. DDR assigned its statutory right of redemption to Heritage Renovation, who then assigned the right to Appellee South Long Run Land Trust ("SLRLT").

Appellant Jason Stanford ("Stanford") is the sole member of both JMFS and SSQ. The Kentucky Secretary of State administratively dissolved JMFS and SSQ in October 2021 for failure to pay taxes and both LLCs remained dissolved at the time of the Sale, at the time JMFS assigned its right of redemption to SSQ, and at the time SSQ recorded that assignment. On October 7, 2022 – five days prior to the expiration of the 6-month right of redemption deadline – SSQ (1) recorded the Assignment of Right of Redemption and Quitclaim Deed and, (2) tendered an Agreed Order Redeeming Property ("Agreed Order"). The Agreed Order indicated that SSQ paid the purchase price ($30,000) plus interest

---

[1] During this period of administrative dissolution, a separate LLC registered under the name "South Side Quarry, LLC." As a result, the original South Side Quarry, LLC amended its name to "South Sides Quarry, LLC." Despite this change (and other spelling variations in the record), we shall refer to the Appellant, the original South Side Quarry, LLC, as SSQ.

($1,755.62), but there was no indication SSQ paid the post-sale expenses incurred by the purchaser.

In August 2022, in an unrelated lawsuit, the Jefferson Circuit Court granted Appellee RJDD, LLC ("RJDD") summary judgment against JMFS. Shortly thereafter, RJDD recorded a corresponding Notice of Judgment Lien on Real Estate. In October 2022, RJDD motioned to intervene in this redemption action. RJDD asserted that although JMFS assigned its 25% interest in the Property to SSQ in April, JMFS did not record the assignment or file a quitclaim deed effecting that transfer until October 7. RJDD argued its judgment lien interest attached to JMFS's interest in the Property 30 days prior to the transfer to SSQ and that the transfer "has all the indicia of a fraudulent conveyance to be voided." RJDD asserted that – as JMFS and SSQ were single-member LLCs with Stanford as that sole member and the transfer lacked consideration – the assignment "served no purpose other than to move equitable ownership in the [Property] away from JMFS at the same time RJDD was closing in on its judgment. RJDD also argued that as both JMFS and SSQ were administratively dissolved and remained in bad standing with the Secretary of State at that time, they "lack[ed] any right to conduct business within the Commonwealth of Kentucky." In November 2022, the circuit court granted RJDD's motion to intervene in this redemption action.

-4-

On October 11, 2022, SLRLT (assignee of DDR's right of redemption) filed a notice/motion/objection exercising its right of redemption and objecting to SSQ's Agreed Order. Specifically, SLRLT objected to SSQ's implication in its Agreed Order that it held "exclusive" interest in the Property. After subsequent pleadings, SLRLT moved to hold its motion in abeyance and informed the court that it would support any order sustaining Hobbs Station's effort to retain title of the Property free from SSQ's redemption efforts.

On October 17, 2022, Hobbs Station (assignee of the purchaser of the Property) also filed an objection to SSQ's Agreed Order. Hobbs Station asserted that a business entity may not conduct business while dissolved other than that business required to "wind up" affairs. Hobbs Station asserted, "[a]cquiring encumbered real property as a minority interest co-owner with another unaffiliated party as tenants in common *with no plan for disposition* can hardly be considered 'winding up' affairs." Further, Hobbs Station argued that Kentucky law "expressly and unequivocally" limits the redemption deadline to six months following the date of sale, not "six months[] plus whatever amount of time [a business] needs to get its affairs in order." Thus, Hobbs Station argued, as SSQ was dissolved at the time of the sale *and* for the next six months, SSQ did not and could not validly redeem the Property within the statutory deadline.

In January 2023, the Master Commissioner held a hearing on SSQ's Agreed Order Redeeming Property and the parties' objections thereto. Stanford appeared without counsel, stated his current counsel was in the process of withdrawing, and he was hiring new legal representation. The Master Commissioner granted Stanford's request for more time, ordered briefs due on February 14, 2023, and set the next hearing for February 21. By February 14, RJDD, SLRLT, and Hobbs Station had filed full briefs opposing SSQ's Agreed Order. Importantly, in its brief, Hobbs Station noted that JMFS/SSQ had still not reimbursed it for its reasonable costs incurred after the Sale, *i.e.*, the 2022 ad valorem taxes due on the Property.

On February 9, 2023, the Secretary of State reinstated JMFS and SSQ. Less than a week later, on February 14, SSQ filed a response to objections addressing only *one* argument. SSQ asserted that its reinstatement resolved any objections involving its status as a dissolved LLC because "all actions of these LLCs relate back and take effect as of the date of the administrative dissolution" and "operates as if the dissolution never occurred." As such, SSQ argued that the objections were without merit and the redemption was properly and timely taken.

On February 21, 2023, the Master Commissioner held another hearing. At this hearing, Stanford, SSQ, and JMFS were jointly represented, and RJDD (lien holder), Hobbs Station (assignee of the purchaser of the Property), and

-6-

SLRLT (assignee of DDR's right of redemption) were each present and represented separately. Essentially, RJDD, Hobbs Station, and SLRLT argued that JMFS's assignment to SSQ was improper, not timely, and fraudulent, thereby void. Conversely, SSQ argued that when the Secretary of State canceled the certificate of dissolution for JMFS and SSQ in February 2023, its retroactive effect perfected any procedural errors and if opposing parties wanted to pursue a claim of fraudulent conveyance, they must initiate a new action.

In September 2023, the Master Commissioner entered a report that found JMFS's assignment to SSQ was done "with the actual intent of defrauding RJDD[,]" and SSQ's later reinstatement, under these circumstances, did not retroactively authorize the assignment attempted during the period of dissolution. Thus, the Master Commissioner determined that the assignment was void and SSQ never held a valid statutory right of redemption in the Property. Further, the Master Commissioner held SSQ did not properly redeem the Property because there was no evidence that SSQ paid the statutorily required costs incurred by the purchaser. As such, the Master Commissioner recommended the circuit court deny SSQ's Agreed Order and not permit SSQ's redemption.

SSQ (with JMFS and Stanford) filed exceptions to the Master Commissioner's report arguing error in procedure and of law. SSQ asserted that RJDD was required to bring a *separate action* to pursue a claim alleging fraud, but

-7-

that RJDD had failed to do so. Also, SSQ argued the record did not support the Master Commissioner's finding that the delayed assignment was improper or intended to defraud RJDD. SSQ argued that reinstatement of a company relates back to the dissolution date and acts "as if the administrative dissolution never took place." Thus, SSQ argued, the redemption was timely. Lastly, SSQ placed the burden on Hobbs Station (as purchaser) to request reimbursement for its reasonable expenses but, as Hobbs Station failed to do so, none were owed.

Conversely, SLRLT, Hobbs Station, and RJDD filed responses to SSQ's exceptions in support of the Master Commissioner's findings. SLRLT asserted that SSQ was attempting to distract from the concealment of the improper, no-consideration transfer. Further, SLRLT argued, Stanford admitted JMFS and SSQ were dissolved due to owing "back taxes," and as such, he "cannot fail or refuse to pay [his] taxes and then use [his] own conduct and failures as justification to extend clearly stated statutory deadlines." Lastly, SLRLT questioned if SSQ's redemption (and Agreed Order) is defective on its face because SSQ's request attempted to redeem the Property in whole, not just its 25% interest. Similarly, Hobbs Station argued SSQ failed to timely exercise its statutory right of redemption and that reinstatement did not cure that failure. Notably, Hobbs Station pointed out that it had included its reasonable expenses in its prior

-8-

pleading, and "[t]o date JMFS/SSQ has still not made any attempt at payment for taxes.

In December 2023, the Jefferson Circuit Court entered an order denying SSQ's exceptions and adopting the Master Commissioner's report. The circuit court found that JMFS's assignment to SSQ was a voidable transfer with respect to RJDD because it was an asset transfer made with only nominal consideration, concealed for almost six months, and "made with actual intent to defraud RJDD[.]" The court did not find the fraud argument to be procedurally improper and stated that, under these circumstances, SSQ's reinstatement did not restore its expired statutory right of redemption. The circuit court agreed with SSQ that normally an LLC reinstatement allows a business to resume and "relate back" to the effective date of the administrative dissolution, but, under these circumstances, that "relating back" can only go back to when "the rights of the parties have been finally decided." That point here, according to the court, was the expiration of the right of redemption's six-month time period "because expiration of the statutory time period extinguishes the statutory right."

Next, the circuit court noted that the right of redemption statute requires the redeemer to pay the purchasers costs, but here SSQ's Agreed Order did not indicate it paid Hobbs Station's costs and "the record is devoid of any evidence that SSQ has paid [Hobbs Station's] costs or made any sort of inquiry

-9-

regarding the same."[2]  Ultimately, the circuit court found that JMFS's (right of redemption) assignment to SSQ was a voidable conveyance, and as such, SSQ's Agreed Order must be denied as it never owned the statutory right of redemption.

Stanford, JMFS, and SSQ collectively appealed.  JMFS and SSQ are single-member entities, and that sole member is Stanford.  As we are primarily discussing SSQ's attempt at exercising redemption, we shall refer to the Appellants collectively as "SSQ" unless distinction is otherwise necessary.  Similarly, RJDD (lien holder), Hobbs Station (assignee of the purchaser of the Property), and SLRLT (assignee of DDR's right of redemption), the active appellees, also filed jointly on appeal.  For clarity – except where distinction is otherwise necessary – we shall refer to these active appellees collectively as "Hobbs Station" because as the purchaser of the Property, it is Hobbs Station's interests we are addressing.  As we are analyzing only questions of law – including statutory interpretation – our review is *de novo*.  *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky. App. 2005) (citation omitted); *see also Estate of Benton by Marcum v. Currin*, 615 S.W.3d 34, 36 (Ky. 2021) (citation omitted).

---

[2] Also, the circuit court noted that the interest that JMFS and SSQ are claiming is only a minority 25% ownership interest, but that these entities "persist in not acknowledging" this fact in their pleadings.  As such, even if the Property had been properly redeemed, SLRLT would own 75% of the Property.

-10-

## ANALYSIS

The convoluted facts bear repeating. SSQ was administratively dissolved in October 2021. The Property was sold (by court order) on April 12, 2022, for less than two-thirds of its appraisal value. JMFS assigned its right of redemption to SSQ on April 15, and recorded that assignment (and quitclaim deed) on October 7 with an Agreed Order. The 6-month right of redemption deadline was on October 12. SSQ was not reinstated until approximately four months later on February 9, 2023.

As a preliminary matter, the circuit court determined, in part, that the assignment from JMFS to SSQ was made with "actual intent to defraud RJDD." On appeal, one of SSQ's main arguments is that the circuit court erred in finding fraud. However, we do not need to address that contention because the assignment itself is not dispositive. Stated another way, under these circumstances, even if the assignment was valid, SSQ failed to properly exercise the statutory[3] right of redemption and the relevant "reinstatement statute" (*here*, KRS 14A.7-030) within Kentucky Business Entity Filing Act, KRS Chapter 14A, cannot save SSQ's redemption.

---

[3] Kentucky's statutory right of redemption, which exists for a specified time period following a foreclosure sale (KRS 426.530(1)), is separate and distinct from the common law equity of redemption, which is available prior to the foreclosure sale. *See U.S. v. Wood*, 658 F. Supp. 1561, 1567 (W.D. Ky. 1987).

-11-

## A. Right of Redemption under KRS 426.530

Kentucky law has long favored the right of redemption. *Johnson v. Akers Dev., LLC*, 672 S.W.3d 205, 209 (Ky. App. 2023) (citing *Moore v. Bishop*, 49 S.W. 957 (Ky. 1899)). "However, the right of redemption is not without limits[,]" and must be exercised in the prescribed time and manner to "redeem" the property from foreclosure. *Id*. KRS 426.530, the relevant "right of redemption statute," allows a property owner to redeem his/her property within six months if the court-ordered sale did not bring two-thirds of the property's appraisal value. KRS 426.530(1). We are required to interpret this statute according to its plain meaning, and we must assume the legislature "meant exactly what it said, and said exactly what it meant." *See Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citation omitted). In fact, "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out *the intent of the legislature*[.]" KRS 446.080(1) (emphasis added).

Per KRS 426.530, the redeemer is required to pay the original purchase price, 10% per annum interest, *and* any reasonable costs incurred by the purchaser. *Id*. This "reasonable costs" language is explicit in the right of redemption statute. KRS 426.530(1). Here, Hobbs Station first stated SSQ's failure to pay reasonable costs in a pleading filed February 14, 2023. In a pleading filed October 6, 2023, Hobbs Station articulated its specific reasonable costs,

-12-

$3,310.77 for 2022 taxes. On appeal, Hobbs Station argues SSQ never paid nor inquired about these reasonable costs.

SSQ encourages us to "disregard" this argument (that reasonable costs were compulsory) because it believes the reasonable costs were not mandatory, none were identified, and "any shortfall is *de minimus*." SSQ cites *Johnson v. Akers Development*, *supra*, to support its contention that only substantial compliance is required for the reasonable costs element of this redemption statute. Accepting that contention, it is unclear how SSQ complied even a little bit, let alone "substantially." Also, the facts here are distinguishable from *Akers Development*. In *Akers Development*, the redeemer took reasonable steps to inquire about the post-sale expenses and costs, and once such payments were identified, the redeemer promptly paid. 672 S.W.3d at 209. While payment was made after the six-month deadline, it was only the *failure of the purchaser* to disclose those costs (after they were requested), that delayed the payment of the costs. *Id*. Here, SSQ did not inquire as to those costs, nor did it pay after Hobbs Station disclosed them. Thus, SSQ did not substantially comply with the statute's requirement to pay the purchaser's reasonable costs.

While this Court has found, in limited circumstances, that substantial compliance as to the *cost element* is sufficient, that same leniency cannot be extended to the six-month deadline for the redemption itself. The six-month

-13-

redemption deadline is explicit in KRS 426.530(1). We must assume the words of the statute are intentional. *See O'Daniel*, 153 S.W.3d at 819 (citation omitted). Here, that legislative intent is even more clear because in 2014, the legislature specifically shortened the statutory deadline from 12 months to six months. This six-month deadline must be "strictly construed" and if a property has not been validly redeemed within six months of the sale, it cannot be redeemed at all. *See Kirklevington Assocs., Ltd. v. Kirklevington N. Assocs., Ltd.*, 848 S.W.2d 453, 455 (Ky. App. 1993) (citation omitted) ("While redemption statutes are remedial in nature and subject to liberal construction in general, the provisions which establish the class of those entitled to redeem, and the time period in which redemption is permitted, are ordinarily strictly construed."); *see also Gross v. Logan*, 197 S.W.3d 571, 575 (Ky. App. 2006) (holding that once the date of redemption has passed, "the redemption has either already occurred or the right of redemption has been finally and completely lost").

### B. Reinstatement under KRS 14A.7-030

SSQ filed its Agreed Order redeeming the Property on October 7, five days before the six-month redemption deadline. SSQ admits it was dissolved on October 7, but argues its reinstatement four months later (February 2022) "related back" to its original dissolution date (October 2021). SSQ asserts the relevant reinstatement statute (KRS 14A.7-030) and caselaw discussing that statute

-14-

(*Pannell v. Shannon*, 425 S.W.3d 58 (Ky. 2014)) are decisive and require the courts to disregard the dissolution in total. Hence, SSQ argues, the October 7 redemption was timely and valid. While we appreciate SSQ's argument, under these circumstances, we cannot read one statute *alone*; we must harmonize statutes together, not just read one statute, or one subsection, in a vacuum. *See Falk v. Alliance Coal, LLC*, 461 S.W.3d 760, 764 (Ky. 2015) (citation omitted) ("[W]e presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.").

When an administratively dissolved entity is reinstated, that reinstatement "shall relate back to and take effect as of the effective date of the administrative dissolution" and "the entity shall continue carrying on its business as if the administrative dissolution or revocation had never occurred[.]" KRS 14A.7-030(3)(a), (b). In discussing this rule and its application, our Supreme Court in *Pannell*, *supra*, held that a company's reinstatement "was retroactive to the time of the dissolution, thus giving the company (and any resulting immunity) a seamless existence." 425 S.W.3d at 85. We agree with SSQ that the cited language appears absolute, but we agree with the court below that *Pannell* is distinguishable (albeit helpful).

-15-

*Pannell*'s primary analysis relates to the *personal liability of an LLC member* for actions taken during a period of dissolution before a subsequent reinstatement. Unlike *Pannell*, we are not discussing *personal liability* for a member during dissolution; we are discussing a company's asset transfer during dissolution *in conjunction with* other statutory requirements. Despite these disparate facts, we may still apply *Pannell*'s general concept to the situation before us. *Pannell* held, in part, that "a member of a limited liability company enjoys statutory immunity from liability . . . for actions taken during a period of administrative dissolution *so long as the company is reinstated before a final judgment* is rendered against the member." *Id.* at 67 (emphasis added). *Pannell* places the dividing line at the "final judgment." Here, the statutory deadline (for redemption) is akin to the "final judgment." Despite our review being *de novo*, we find the words of the circuit court worth repeating:

> The concept of establishing a "dividing line" for determining the retroactive effect of an LLC's reinstatement applies equally to the case at bar, as a dissolved LLC would be under no urgency to complete its exercise of the statutory right of redemption [by seeking reinstatement] because its eventual reinstatement, whether it be months or years after expiration of the six-month statutory time period, would resolve any problems related to its status as a dissolved LLC. The possibility of such a delay would be inequitable to the purchaser at a foreclosure sale, whose ownership and possession is left subject to the whim of the dissolved LLC.

We agree. Thus, applying *Pannell*'s approach to the facts before us, SSQ's actions (the attempted redemption) taken during the period of administrative dissolution are not protected/enforceable because the reinstatement did not occur before the statutory redemption deadline. *See id*. We agree with the *Pannell* Court that such LLC reinstatement negates the dissolution completely – and acts as if the dissolution never occurred – as long as that reinstatement occurs before a statutory right has reached finality.

Again, we must read the reinstatement statute *in tandem with* the right of redemption statute. *See Alliance Coal*, 461 S.W.3d at 764. While an LLC's reinstatement does relate back to the time of dissolution to provide immunity in some circumstances, this is not one of those times because the statutory deadline passed before reinstatement. *See Pannell*, 425 S.W.3d at 67. To hold otherwise would create chaos for potential purchasers at sales who would be subject to complete uncertainty as to the expiration of the statutory deadline.

Here, KRS 426.530 requires a property owner to exercise the redemption and pay the purchase price, 10% per annum interest, *and* any reasonable costs incurred by the purchaser within six months of the court ordered sale. SSQ paid the purchase price plus 10%, but did not execute the redemption within six months nor paid the reasonable, post-sale costs incurred by the purchaser. In this case, the redemption deadline date was October 12, 2022. At

-17-

that time, SSQ was administratively dissolved. As of October 12 (and not analyzing the *effects* of the later possible reinstatement) there was no active entity to serve with process, nor an agent to receive it, and no principal place of business. There was no active entity that could exercise a right of redemption or act as a "grantee" on a deed.

The October 12 redemption deadline must be strictly construed. *See Kirklevington*, 848 S.W.2d at 455 (citation omitted). SSQ was not reinstated until four months after the redemption deadline. Any extension of the redemption deadline would be inconsistent with the legislature's clear intent. Because the Property was not redeemed by October 12, SSQ lost the ability to redeem it. *See Gross*, 197 S.W.3d at 575; *see also Pannell*, 425 S.W.3d at 67. Even if SSQ had not missed the redemption deadline, SSQ did not inquire about nor timely pay the required reasonable costs of the purchaser, Hobbs Station.

Therefore, the general reinstatement statute cannot, under these circumstances, defeat/overcome the strict deadlines intended by the legislature within the appliable right of redemption statute. Assuming *arguendo* that the assignment from JMFS to SSQ was valid, SSQ did not exercise a valid statutory right of redemption, and the circuit court did not err in denying SSQ's Agreed Order.

## CONCLUSION

Accordingly, the December 12, 2023, Judgment of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

John D. Cox
Louisville, Kentucky

BRIEF FOR APPELLEES
RJDD, LLC, HOBBS STATION
TRUST & SOUTH LONG RUN
LAND TRUST:

Brad Lammi
Louisville, Kentucky